Morning, Your Honor. May it please the Court, I'm John Hayes. I'm the attorney for the appellant Richard Sherman. This is a bankruptcy case, as you know. It's about the bankruptcy discharge. And what I wanted to spend a minute or two on, starting, is three really important facts, which I assume the Court is aware of, but it's the whole crux of the case. The first important fact is the SEC concedes that Richard Sherman did not violate any securities laws. He hasn't been charged with violating any securities laws. There's a finding of fact issued by Judge Barry Russell that the SEC conceded that he hasn't violated any securities laws himself. The second important fact, I believe the Ninth Circuit in the last appeal also on the motion to dismiss the Ninth Circuit in footnote 33 stated that we have a man who hasn't been charged with anything. That's true, but can we focus on the funds? We understand his status, but what's troublesome is that he has money from the company that was in violation of the securities laws, and he basically had to give it back to the company because he couldn't, he hadn't earned it. And the prior case found that under the Coelho decision that he was essentially holding it as a third party. And, in fact, it was our colleagues on that panel who suggested that the SEC had sought the wrong remedy, should have come after it, among other things, might have come after it, didn't decide it, I guess, on the merits, but suggested this 523 discouragement process. Now, he was, I don't think your client has disputed that he was under a discouragement order. Oh, we don't dispute that. So then the question is whether the debt has to be his debt or it is a debt that arises out of a discouragement order. So could you help us walk through that? Oh, yes, I could. And I would say that the second point, the second factual point was going to be that even in Judge Snyder's, well, when she reversed Judge Barry Russell's opinion, she states that he didn't wrongfully take the money. And the discouragement order makes it clear that the reason he has to give the money back is there's a contractual obligation to give it back. It was a loan. He didn't actually earn it. He had a duty to give it back. The Coelho case, which Judge Barry Russell talked about quite a few times in the motion for summary judgment hearing, it makes the unfortunate comment that these are ill-gotten funds. And, you know, the Coelho case, first of all, wasn't a bankruptcy case. Secondly, Section 523A19 wasn't in the bankruptcy code when the Coelho case was ruled upon. It didn't come for five ‑‑ A19 didn't come along for five more years. But what Coelho was is a man who was initially charged with securities violations. He received $2.6 million that he had this sort of nebulous statement of here's why I have the right to keep that. When they asked him to show what really happened to the money, he pleaded the Fifth Amendment. His defense was, I don't ‑‑ you can't make me a nominal defendant in this securities case against somebody else. Presumably what he said is if you want to sue me, sue me, but I can't be a defendant in this case unless you're saying that I violated the securities laws. And what the Ninth Circuit ruled in Coelho is that the Ninth Circuit has jurisdiction that within the securities action against somebody else they have the right to try to get money back, that there's some obligation to give it back. The problem with the ill‑gotten funds is that that really makes everybody liable. That makes ‑‑ which has actually been happening these days in bankruptcy cases that have nothing to do with Section A19. But if you're going to focus on we have this bad guy who is running a business and doing bad things, therefore whatever money he has is ill‑gotten funds, then whoever he gives it to. Well, that's not quite right. Coelho deals, as I understand it, with a nominal defendant. In possession of funds, supposedly. Yeah, but it's some kind of agency or trustee or holder in that sense. It's a limited universe of people that it would apply to. Well, his defense was that he was using the money to buy letters of credit and that he earned some of it because of some of the work he was doing. And the response to that was, prove it, show us what you did with all of that money. They didn't ‑‑ it's not like the Matthews case sort of, where they were just sort of giving him some of the money. Well, wait a minute. This is in advance against legal services, wasn't it? Well, it's the same. Right. And we did explain. For a purpose. They were paying ‑‑ you're trying to say it turns anybody into ‑‑ Well, that's right. I think. I suppose, and I'm trying to look at the facts of this case and bring it within the concept of Coelho, which is a nominal defendant kind of cases. But I think that's. It wouldn't shrink the universe, would it not? Well, I don't ‑‑ if it's this concept of ill‑gotten funds, that's what I think. If the idea is that the person violating the securities laws is a bad guy, and he ‑‑ you know what I was thinking? I have a friend who has investment funds. If I went to him and borrowed $100,000 from his fund, and two years later the SEC is after him, and they say he's stealing people's money or whatever he's doing, and now they want me to repay the loan, have I received ill‑gotten funds? I certainly have an obligation. Are you a nominal defendant? Within that circumstance, you'd be a nominal defendant? I absolutely. Under Coelho, they would take the position that I received money, and it was ill‑gotten funds, and I have the duty to give it back, which I do. The question is, and it's a debt. We don't deny that. The question is, is it a debt that is not discharged under Section A19? And A19 says it has to be a violation of securities laws. And I think the third fact I was going to bring up is that the fact is that Mr. Sherman was permitted to keep $300,000 of the money he received. He received something like $880,000 altogether. The court said, Judge Snyder said in her disgorgement order, that $300,000 of it he earned pursuant to the contract that he signed with Whitworth. And he only had to give back the rest of the money, and the reason why is he had a contractual obligation to give it back. So do you focus on the bad guy saying that he's giving away other people's monies and, therefore, that's a violation of the securities laws? That's the jump that the SEC wants you to take. The Matthews case they also rely on quite a bit. That case was, I mean, I spent a long time reading that. It's a district court opinion. But that case, the action was brought against Mr. Matthews under unjust enrichment. And the reason for that is that they didn't have any contractual basis to make him give the money back. He was an early investor, an early investor in the Ponzi scheme. Therefore, he got some of his money back. The people at the end of the Ponzi scheme don't get their money back. There's no basis to make him give the money back other than unjust enrichment. And Oklahoma securities laws permitted, permit, Oklahoma securities laws provide for an action for unjust enrichment against a person who has received money at the front end of the Ponzi scheme. And the court, the bankruptcy court and the district court, both said that since it comes under securities laws, that's enough. That's a violation. I think that case goes too far. But it was brought under the Oklahoma securities law statutes, and that made it a violation of the securities laws. If the position is going to be that he received money from a bad guy, and he therefore has an obligation, that he does have an obligation to give back. But since he received it from a bad guy, it's ill-gotten funds. It's a constructive trust. That's not what the code says. My final comment would be, you know, there's 19 exceptions. And there's an exception, debts for student loans, debts for fines, debts owed for support obligations. When I started doing this 30 years ago, there were 10 exceptions. Now there's 19. The last one is debts for violations of securities laws. It just, what the SEC is saying, well, when somebody gets in the way of our scatter gun and owes money, and there's a securities lawsuit pending, and we got the order in the securities lawsuits, that's enough. It doesn't, they can see that it's not a violation. But because it's sort of within this purview of securities laws, that's enough, which is beyond what the code says. I'd like to reserve the rest of my time, if I could. Sure. May it please the Court. My name is Morgan Brady-Lyons, and I represent the Securities and Exchange Commission. With me at council table are Karen Maness and Michael Berman. Karen worked on this case below. As already held by this Court, Mr. Sherman owes a debt for discordment based on his receipt of fraud proceeds. These are the ill-gotten gains. Essentially, Mr. Sherman received money that he was not entitled to. The Commission sought to recover this money so that it could be returned to investors, and just before the hearing on the Commission's discordment motion, Mr. Sherman filed for bankruptcy, and he now seeks to discharge this discordment judgment against him that he does not contest. And the Commission believes that 523A19 precludes this discharge. Before turning to 523 itself, I would just like to clarify what the discordment debt represents. The debt is a judgment for money that came from defrauded investors in the Whitworth oil and gas ventures, which is why it is fraud proceeds. Mr. Sherman represented certain affiliated entities in litigation over the ownership of certain natural gas assets for a contingency fee of 40 percent of any recovery. The litigation settled for $750,000. So Mr. Sherman's contingency fee entitled him to keep the $300,000 that he referred to, but he had taken advances of more than $881,000 during the course of the litigation. So the discordment judgment is for the $581,000 that he did not earn and he's not entitled to keep. As this Court has also already held, and you mentioned earlier, Judge Fischer, the basis for the Commission's judgment is found in SEC v. Colello. This Court in Colello has recognized the Commission's right to recover money from relief defendants. These are persons who obtained money in a securities fraud, but who did not themselves violate the securities laws. I think to narrow the basis for the people who will be subject to this, I just wanted to make clear that a relief defendant must have received ill-gotten gains and he must have no legitimate claim to the money, which is the case here for the $500,000 that Mr. Sherman did not earn. So the $581,000 discordment judgment is for fraud proceeds. Now, we believe that A-19 accepts from discharge any debt that is for the violation of the securities laws, and that applies to the debt here because a federal securities law violation is one of the elements that must be established in order to obtain the judgment that gave rise to the debt here. In essence, without the securities law violation, there would be no discordment judgment, and that is why the debt is for a violation of the securities laws. In this case, the District Court found that the principal defendants in the Whitworth securities fraud action had violated various anti-fraud provisions of the securities laws, and under Colello and Wenke, in actions brought by the Commission to enforce the federal securities laws, the District Court has equitable authority to order a variety of ancillary relief measures, including discordment from nominal relief defendants like Mr. Sherman. So take his counsel's hypothetical and distinguish it from this case as to why it wouldn't reach his borrowing money from an investment company. Well, I think in this case what you need to have, and what we do have here, is you need to have a securities law violation. So I assume that I go to a friend of mine who runs an investment stock type of venture capital or whatever, and it turns out, unbeknownst to me, he's running a Ponzi scheme. And I borrow $500,000 on a straight-up promissory note and all of that, and I take the money and I put it in my bank because I want to invest on my own, and I'm paying an agreed rate of interest. And the SEC gets a Ponzi scheme judgment against my lender, and I haven't dispersed the money yet, or at least not all of it. I've still got $300,000 left, and if I were doing this in the real world, I would have lost it right away. My investments never turn out to be any good at all. But let's suppose there's still some $300,000 in my bank account. And then because my investments have gone south, I declare bankruptcy. Okay? Now, am I going to be able to discharge the $300,000 debt to my lender under your theory? Well, I think it really hinges on whether or not you had a legitimate claim to this money. And I think if you had borrowed it under an agreement and were sort of paying it back pursuant to the agreement and this money was still you still were holding onto this money legitimately, then I don't think it's the same circumstance that we have here where we have a disgorgement judgment against Mr. Sherman. But what is the decisive answer to my question that draws that distinction? What law? What legal principle? We think that it's really it has to be if you fit within the Colello theory. If you're a relief defendant under Colello, then 523A19 would preclude a discharge. The commission believes that the plain language of the statute and the legislative history both support its interpretation here. The language of 523A19 is very broad. Other exceptions to discharge in 523A explicitly apply to conduct by the debtor. That language is not included in A19A. And Mr. Sherman's interpretation in some ways would rewrite the statute to include by the debtor where it is not. As with a number of exceptions. There are other provisions, counsel, in 519 where we have read into that by the debtor where we might not have. For example, in 2A, A2A, which has to do with obtaining money under false pretenses, false representation or actual fraud. I think we've read that. I think we've read that as though it said false pretenses by the debtor. That seems like that might be fairly analogous to your thing about 19. That it's bad acts. Money was obtained under bad acts, and yet we've said it has to be by the debtor as the actor. Why shouldn't we read that into 19? Your Honor, I believe that some provisions in 523A really focus on wrongful conduct by the debtor. And I think A2A, as you mentioned, is one of those provisions. But there are other provisions of 523A that focus instead on a type of debt, regardless of wrongful conduct by the debtor, that Congress has decided for public policy reasons simply should not be discharged. And that would be which sections? For educational loans, for instance, which is A8, A5 is domestic support obligations. There are several provisions that do along those lines refer to types of debt. Well, A8 does refer to the debtor. Yes. I'm sorry, Your Honor. It refers to the debtor, but it's not focused on wrongful conduct by the debtor. It's really just a type of debt, educational loans, that Congress has decided should not be discharged. And my argument is that A19 also reflects a decision that debt for a violation of the federal securities laws, whether or not that actual violation was by the debtor is a type of debt that Congress believes shouldn't be discharged. And some of the legislative history indicates Congress was, among other things, concerned with compensating defrauded investors to the greatest extent possible. And I think our interpretation is consistent with that. I'm sorry. I just want to make sure I understand. So you agree with Judge Bybee that we have implied into certain provisions the notion that it has to be by the debtor, that the bad acts have to be by the debtor? I think, yes, courts have implied that. That has been done, and that Congress within this statute has specifically done it to limit, like the student loan situation has specifically itself limited it to bad acts by the debtor? Yes. Okay. So how does that help your case since they haven't done that here? So we think that they did not limit it to bad acts by the debtor here because that's not what is intended. It's simply violations Congress could have put in by the debtor. And I thought my first part of the question was that even where Congress didn't put it in, courts have implied it in. Yes. Notwithstanding, so. No, I think that I understand your question now, I think. And my response would be that we don't believe courts should read that in in this provision for various reasons, including that it's a type of debt and that Congress, in enacting this provision, was hoping to compensate defrauded investors to the greatest extent possible. How far does the provision, how far does your reading of 19 carry? If we were to read in the phrase by the debtor, as we have in other places in 523, that provides a very natural burden of proof on the government for, or on the debtor for, obtaining relief under Section 19, under Part 19 here. If we don't read that term in there, so if we follow the SEC's reading of this, then how far afield from the actual violator can we get under this provision? Well, Your Honor, I would just say with respect to this case, that we believe that the violation of the securities laws is an essential element in obtaining the disgorgement judgment. So I don't think you've actually gone very far afield. But if Mr. Sherman had bought a house, and we weren't sure what proceeds he had used, but it was during the time when he had access to the funds that were obtained from the company that ultimately was found to be an SEC violator, could we go back to the seller of the home and ask for the money back? Or if Mr. Sherman had given gifts to a charity, it made a donation to the American Cancer Society or the Lance Armstrong Foundation or something, could we go back and ask for the $10,000 in cash gifts that he had made because he used it with funds that were available to him during the time when? How far afield does all of this go? I mean, I think in this case it is limited by – In this case it is, but that's not my question. Right. I think a different case. There needs to be – I think there would have to be a demonstration that the person that we were going after for the funds had no legitimate claim to the funds, which I think in terms of parties who actually provide value, I think that would really – rescues from your hypothetical parties who have given value would not have no legitimate claim. And Mr. Sherman, you were not going after the $300,000 that was for the legal services that he provided. Right. No, I concede all of that. But if he's taken – if he might have taken some of this money and given it to the Lance Armstrong Foundation as a charitable donation, can you go after the Lance Armstrong Foundation? I think that – Your Honor, I actually don't know the answer to that question, but I'd be happy to assist. We're just one more degree removed from Mr. Sherman. My question is how far does the government's theory extend? Well, they wouldn't have – I don't believe so. Right. I mean, they'd have to have – Well, if the foundation had gone into bankruptcy, can they go after everybody down the road? The Armstrong Foundation doesn't even have a bankruptcy claim here, but you might go after them, right? I don't believe so. Then we would have the 19 issue, wouldn't we? We would not – I think we would not – we're not trying to extend it to people who are not really within one degree. I think Mr. Sherman directly received the proceeds. And what assurance – how do we get that out of the statute? I think, again, you need to have the securities law violation as an element of the claim against you, and I think that's the case with Mr. Sherman here because it's necessary. There's no securities law violation alleged against Mr. Sherman. True. He is not. It's the source of the funds. Right. That entity had a judgment against it, and you answered my question earlier that it was the Coelho, which is the nominal defendant category of people, and you can't answer whether the Lance Armstrong Foundation is a nominal defendant? No. I'm sorry, Your Honor. That clarifies. Clearly, they would not be a nominal defendant under a Coelho theory, under my understanding, and that's really all that we are saying here. And what about his house? If he bought a house with the money instead of earned it, as he did in this case by performing legal services, he's dispersed $500,000 or whatever amount, $300,000, to make a down payment on a house. Okay, so would he be responsible nonetheless for that $300,000? That is Mr. Sherman. Mr. Sherman would be responsible for the money that he owed under the disgorgement order, and I think that doesn't require us to go down the chain, but he would be responsible for it. He'd have to have the liquid cash still in his possession. Is that what you're saying? I suppose that he has had a lot of opportunity to procure the liquid cash or to liquidate. The disgorgement order was entered in 2002. So I think that whether he has it now or can obtain it. Okay. Thank you. I'd like to comment about Judge Fisher's comment. You changed my facts slightly, but there may be a very important misunderstanding here. If Mr. Sherman actually had any of that money when the disgorgement order was entered, he didn't turn it over.  It would be non-dischargeable under A6, willful and malicious injury to person or property, which, by the way, the deadline to do that ran a long time ago. But Mr. Sherman was getting $25,000 a month, and in answer to Judge Bybee's comments, he was giving that money to his employees and the lawyers that were working for him and his landlord and the copy services that he used. When the disgorgement order came along, he didn't have any of that money left. He clearly had a debt. But what counsel just said for the SEC said that without the securities laws, there would have been no disgorgement order. That's not true. The receiver could have sued him in state court. The receiver probably could have just filed a complaint with the Bar Association because he received fees that under his contract he was required to give back. This is a simple contract action. Counsel also said this is money he had no legitimate claim to. That's not true. He had a contract. And if you look at the disgorgement order, the order doesn't suggest that he's any sort of a bad guy or he shouldn't have done this, he should have been more careful, he shouldn't have taken on this, he was in cahoots. There isn't the slightest suggestion of that in the original disgorgement order. It says he got the money, he agreed to give it back, the receiver suddenly settled that case out from underneath him and there really wasn't a debt even until the case was over and the receiver suddenly settled that. That created the debt. Judge Snyder again stated that this is money he didn't wrongfully receive the funds. He didn't wrongfully receive the funds in the first place. So counsel said a couple of times, well, these are funds from fraud proceeds, money that he's not entitled to. That's just not the case here. He's a simple creditor of the estate. The code says that if he violated securities laws, it's not discharged. That's not what happened. Unless there's any questions, I'll drop it at that. Okay. Thank you very much. Thank you, Your Honor. We appreciate the argument. The case is submitted and we'll stand in research. We'll stand in recess too. A little abonor. Right.
judges: Strom, Fisher, Bybee